# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>Quadrant 4 System Corporation, et al.,<br><br>          Debtor. | Chapter 11<br>Bankruptcy No. 17-19689<br>Honorable Judge Jack B. Schmetterer |
| BIP Quadrant 4 System Debt Fund, LLC,<br><br>          Plaintiff.<br><br>v.<br><br>Nandu Thondavadi, et al.,<br><br>          Defendants. | Adversary No. 19-00819 |

## OPINION ON MOTION TO DISMISS THE AMENDED COMPLAINT [DKT. NO. 69]

Defendants Philip Firrek, Thomas Sawyer, and Eric Gurr (together, the "Independent Directors") move to dismiss Debtor BIP Quadrant 4 System Debt Fund, LLC's (the "Plaintiff") Amended Complaint. For the reasons articulated below, the Independent Directors' Motion to Dismiss the Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion") will be **GRANTED** by separate order to be entered concurrently herewith.

### BACKGROUND

Quadrant 4 System Corporation (the "Debtor") filed for Chapter 11 bankruptcy on June 29, 2017. [Bankr. No. 17-19689, Dkt. No. 1]. On June 28, 2019, the Plaintiff filed the present adversary case. [Dkt. No. 1]. The Independent Directors then moved to dismiss the original complaint, which the Court granted. [Dkt. No. 23, 45]. Plaintiff filed the current Amended Complaint on January 14, 2020. [Dkt. No. 52] (the "Amended Complaint"). The Amended Complaint, like the earlier complaint, alleges the Independent Directors are liable for at least $29,000,000 in losses suffered by the Debtor, due to breach of fiduciary duty and gross mismanagement. The Amended Complaint also seeks to avoid fraudulent transfers made from the Debtor to the Independent Directors.

The allegations revolve around fraud by the two non-Independent Directors, Nandu Thondavadi ("Thondavadi") and Dhru Desai ("Desai"). The pair were the Chief Executive Officer and Chief Financial Officer (respectively) of the Debtor from 2010 through most of 2016. Aside

from their normal duties, beginning in 2012 the pair allegedly committed wide-ranging fraudulent acts involving misappropriating the Debtor's funds, misrepresenting acquisition terms, and improper revenue recognition. [Dkt. No. 52, ¶¶ 4-22]. The Securities and Exchange Commission (the "SEC") brought actions against the Debtor, Thondavadi and Desai related to the alleged fraud. [Dkt. No. 52, ¶¶ 8, 9]. The Amended Complaint alleges the Independent Directors, as non-executive directors, knew or should have known of the other defendants' fraud, largely based on its pervasiveness. [Dkt. No. 52, pp. 22-27]. The Plaintiff also seeks to recover alleged fraudulent transfers that the Debtor paid as compensation and reimbursement for director services, because the Independent Directors allegedly failed to provide those services. [Dkt. No. 52, ¶¶ 27, 28, 31, 32].

The Independent Directors filed the present Motion on April 2, 2020. [Dkt. No. 69]. They argue, like the original complaint, that the Amended Complaint lacks facts alleging the Independent Directors knew of the criminal scheme and it should be dismissed. They posit that the Plaintiff merely concludes that the Independent Directors should have noticed the ongoing fraud and the Plaintiff fails to point to any facts showing that the Independent Directors actually knew of the fraud or how they failed in their duties. [Dkt. No. 69, p. 20]. Similarly, they argue that the Plaintiff has shown the fraud was so pervasive inside the Debtor that independent directors, like the Independent Directors, would not have noticed. [Dkt. No. 69, p. 20].

The Plaintiff filed its Response in Opposition to Motion to Dismiss (the "Response"). [Dkt. No. 71]. In defense of its Amended Complaint, the Plaintiff argues that it pled facts showing the Independent Directors had warning signs of the fraud, such as filings claiming that neither Thondavadi or Desai received cash compensation from the Debtor from 2010 through 2015 and that two auditors resigned, one of which possibly citing concerns of management integrity to the SEC. [Dkt. No. 71, pp. 5-7]. The Plaintiff also notes that the SEC action against the Debtor specifically targets omissions and misstatements which affected, amongst other filings, the Debtor's Forms 10-K for 2012-2015, which were signed by defendants Thomas Sawyer or Philip Firrek. [Dkt. No. 71, pp. 9, 10]. As this alleged fraud happened on the Independent Directors' watch, the Plaintiff argues they failed to implement oversight or monitoring and, that at least when the first auditor resigned in mid-2015, they had a heightened responsibility to make an inquiry. [Dkt. No. 71, p. 11, 12].

The Independent Directors' followed by filing a reply (the "Reply"). [Dkt. No. 72]. In particular, the Independent Directors argue in the Reply that there is no case law supporting the Plaintiff's theory that their failure to detect fraud requires the return of their compensation. [Dkt. No. 72, p. 11]. Likewise, as to the allegations that the Independent Directors knew or should have known of the fraud, they argue that the Amended Complaint's allegations and the Response do not overcome the business judgment rule. [Dkt. No. 72, p. 3].

## JURISDICTION AND VENUE

Subject matter jurisdiction lies under 28 U.S.C. § 1334. The district court may refer cases arising under title 11 to a bankruptcy judge under 28 U.S.C. § 157, and this matter is referred here by District Court Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (H), and (O).

## DISCUSSION

The Independent Directors move under Fed. R. Civ. P. 12(b)(6), made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7012, seeking dismissal of the Amended Complaint. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2), made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7008. This "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). The plaintiff must plead more than "naked assertions devoid of further factual enhancement." *Id.* The Supreme Court in *Iqbal* goes on to note that the facts pled, when accepted as true, must go beyond "sheer possibility that the defendant has acted unlawfully" and must state a claim with "facial plausibility." *Id.* Pleading with factual plausibility "allows the court to draw the reasonable inference" of liability. *Id.* Despite the somewhat low bar to survive a motion to dismiss, a complaint must still pass the standard outlined in *Iqbal*. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010).

### A. Breach of Fiduciary Duty and Gross Mismanagement

In Counts I and II of the Amended Complaint, Plaintiff attempts to plead breach of fiduciary duty and gross mismanagement claims against the Independent Directors by essentially alleging the Independent Directors were asleep at the switch, so to speak. The Plaintiff, in its Response, highlights four main points from the Amended Complaint to show that it met its

3

pleading requirements. They are: (1) the fraud by Thondavadi and Desai was so pervasive; the Independent Directors should have known about it; (2) a company auditor resigned citing "management integrity" concerns; (3) the resulting internal investigation was a failure; and (4) common sampling and testing methods would have revealed some fraud. [Dkt. No. 71, p. 13]. These four allegations, taken with the rest of the Amended Complaint, are simply not enough to plead a breach of fiduciary duty or of gross mismanagement against the Independent Directors.

In general, the Plaintiff must plead three main elements: (1) a duty exists; (2) a breach of that duty; and (3) proximate cause. *Ball v. Kotter*, 723 F.3d 813, 826 (7th Cir. 2013) (discussing elements of breach of fiduciary duty); *F.D.I.C. ex rel. Wheatland Bank v. Spangler*, 836 F. Supp. 2d 778, 785 (N.D. Ill. 2011) (discussing elements of gross mismanagement/gross negligence and breach of fiduciary duty). The primary question here is whether Plaintiff adequately pled the second and third elements: breach and proximate cause.

The Independent Directors contend their alleged failures cannot overcome the business judgment rule – the presumption that the Independent Directors, as company directors, "made their business decisions on an informed basis, in good faith, and with the honest belief that they acted in the best interests of the company." *Desert Partners L.P. v. USG Corp.*, 686 F. Supp. 1289, 1294 (N.D. Ill. 1988). The Plaintiff counters that the alleged fraud represents the "an inkling of trouble brewing" which prevents the directors from relying "blindly on the judgment of others." *F.D.I.C. v. Bierman*, 2 F.3d 1424, 1433 (7th Cir. 1993) (discussing liability for bank directors); *see also Graham v. Allis-Chalmers Mfg. Co.*, 188 A.2d 125, 130 (Del. 1963) ("[D]irectors are entitled to rely on the honesty and integrity of their subordinates until something occurs to put them on suspicion that something is wrong."). The Plaintiff contends then that the Independent Directors should have had such a suspicion as mentioned in *Graham* and their failure to do anything about said suspicion is a breach of their duty, but fail to cite to some event that should have put the Independent Directors on notice of the problem.

Both parties cite to *In re Caremark Int'l*, 698 A.2d 959 (Del Ch. 1996) in support of their positions. Under *Caremark*, the required elements to show directors breached their duty by failing to adequately control employees are: "(1) that the directors knew or (2) should have known that violations of law were occurring and, in either event, (3) that the directors took no steps in a good faith effort to prevent or remedy that situation, and (4) that such failure proximately resulted in the losses complained of." *Id.* at 971. The Independent Directors use *Caremark* for the proposition

4

that stupid, egregious or irrational actions of a director are not grounds for liability if the director acted in good faith. *Id.* at 967. Plaintiff cites to language in *Caremark* that directors' "utter failure to attempt to assure a reasonable information and reporting system exists" establishes the lack of good faith. *Id.* at 971; *see also Stone v. Ritter*, 911 A.2s 362, 370 (Del. 2006) (discussing *Caremark* and director liability).

The problem with Plaintiff's argument is that it has failed to allege clearly what should have put the Independent Directors on notice. The clearest allegation in that regard is that an external auditor resigned in April 2015 (over two years after the fraud began) allegedly citing concerns over management integrity. [Dkt. No. 52, ¶ 78]. However, in the next paragraph, the Plaintiff notes that the Debtor began an internal investigation (though Plaintiff claims that Thondavadi and Desai then used the investigation to coverup their fraud). *Id.* at ¶ 79. It is unclear from the Amended Complaint how the Independent Directors were to know the internal investigation would fail or why a resigning auditor requires more than an internal investigation. The auditor resigning, as alleged, is not enough to make the Independent Directors liable.

Plaintiff also contends that commonly used sampling and testing processes would have detected this fraud and the Independent Directors either did not put those processes in place or, alternatively, they disregarded the results. [Dkt. No. 52, ¶¶ 99-112]. Even accepting Plaintiff's allegations as true they do not reach the facial plausibility as required by *Iqbal*. *Supra.* To begin, the Plaintiff's pleading is unclear as to whether these processes were ever implemented, as the Amended Complaint repeatedly references that the processes either were not put in place *or* were ignored. Further, this language is simply an almost word for word recitation of the necessary conditions for director oversight liability. *See Ritter*, 911 A.2d at 370. The Plaintiff's failure to plead further allegations specifying cause for the Independent Directors to take some action is fatal.

While the Plaintiff pleads that the Independent Directors' fiduciary duties required "due attention," it fails to plead how they breached that duty beyond a conclusion that due attention would have caught the fraud. The Plaintiff simply claims that the systems used to detect fraud (if any) were so ineffective as to breach the fiduciary duty, merely because they did not detect the alleged fraud. This kind of argument, which is essentially Plaintiff's pervasiveness argument, is replete throughout the Amended Complaint. Plaintiff also pleads, however, that Thondavadi and Desai's fraud involved multiple subordinate employees and fairly elaborate processes, suggesting

5

that catching the fraud may have been difficult and that the Independent Directors in fact had no reason to know of the fraud. Further, criminal violations by a company alone do not create a breach of fiduciary duty by directors. *See Caremark*, 698 A.2s at 972. And without reason to suspect crimes, corporate directors need not "assume ... that all corporate employees are incipient law violators who, but for a tight checkrein, will give free vent to their unlawful propensities." *Graham*, 188 A.2d at 130, 131.

The Independent Directors' failure to detect the complained of fraud alone shows "merely the possibility of misconduct," which is insufficient under the pleading requirements of Fed. R. Civ. P. 8(a)(2). *See Iqbal*, 556 U.S. at 679. There is nothing pled allowing the court to infer that the Independent Directors breached their fiduciary duty or acted grossly negligent in their time working for the Debtor. The Plaintiff has failed to plead what about the fraud committed by Thondavadi and Desai should have arisen suspicion in the Independent Directors, or importantly, what actual required actions they failed to take.

Plaintiff has failed to meet the necessary pleading requirements for Count I and II of the Amended Complaint as to the Independent Directors, and they are therefore dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### B. Avoidance of Fraudulent Transfers

Counts VI through VIII of the Amended Complaint allege that amounts paid from the Debtor to the Independent Directors were for professional duties, but that the Debtor received no benefit or value from those payments. The Plaintiff seeks to avoid these as fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(B).

To recover under section 548(a)(1)(B), the Debtor must have "received less than a reasonably equivalent value" for the payments made. 11 U.S.C. § 548(a)(1)(B)(i). The Plaintiff alleges the Debtor paid each individual Independent Director amounts ranging between $10,000 and $13,125.51. [Dkt. No. 52, ¶¶ 118-20]. These payments were allegedly to compensate and reimburse the Independent Directors for "services" performed as directors. *Id.*, ¶¶ 150, 156, 162. Plaintiff alleges they "failed to perform those services" and the Debtor therefore received no value. *Id.*

Plaintiff cites to *Cf. Marwil v. Oncale (In re Life Fund 5.1 LLC)*, No. 09-B-32672, 2010 WL 2650024 (Bankr. N. D. Ill. June 30, 2010) (Goldgar, A.) for the theory of recovery that, by breaching their fiduciary duties, the Independent Directors failed to deliver the services owed to

the Debtor. Unlike the instant case, however, the directors in *Marwil* were directly accused of looting the company. *Id.* at *1. In *Marwil*, Judge Goldgar reasoned that if the directors stole funds, then the company received no value, let alone reasonably equivalent value. *Id.* at *6. Judge Goldgar also noted that a complaint "will not survive a motion to dismiss if it pleads that a transfer was made for less than reasonably equivalent value without any supporting facts." *Id.* (internal quotations and citations omitted).

Plaintiff does not allege that the Independent Directors personally looted the company, never showed up to board meetings, were out of communication, or otherwise failed to perform their basic functions. Plaintiff instead merely concludes that the allegations for breach of fiduciary duty suffice for the fraudulent transfer claim as well. As discussed previously, Plaintiff has failed to sufficiently plead a breach of fiduciary duty. Simply not doing a good job as a director does not implicate liability for the fraudulent transfer of another.

Accordingly, Counts VI, VII, and VIII are dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

For the foregoing reasons, the Court will by separate order grant the Independent Directors' Motion to Dismiss. Since two attempts at pleading have not produced allegations that show that the Independent Directors' heard alarm bells but failed to act, the present dismissal is final.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 14th day of October 2020